UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

EDWARD WHITE,

        Plaintiff,

v.                                                                  Case No. 3:23-cv-1140-BJD-PDB

CENTURION OF FLORIDA, LLC,
et al.,

        Defendants.
_____

## ORDER OF DISMISSAL WITHOUT PREJUDICE

Plaintiff, Edward White, a former inmate of the Florida Department of Corrections (FDC), initiated this action *pro se* by filing a complaint for the violation of civil rights (Doc. 1; Compl.) in the United States District Court for the Southern District of Florida.[1] He moves to proceed *in forma pauperis* (Docs. 3, 11). The Southern District transferred the action to this Court because Plaintiff alleges that medical providers at the Reception and Medical Center (RMC), an institution in the Middle District, "failed to provide [him medical] treatment from August 2022 to January 2023." *See* Order (Doc. 4) at 2.

---

[1] When Plaintiff filed his complaint, he was housed at Okaloosa Correctional Institution (OCI). *See* Compl. at 1, 7.

In his complaint, Plaintiff alleges he had hand surgery in April 2022, when housed at Dade Correctional Institution (DCI). *See* Compl. at 3. At some point thereafter, he was transferred to OCI and then to RMC. *Id.* At RMC, in about August 2022, Plaintiff had x-rays and was "seen by surgery," but he contends "nothing was done" for the next five months. *Id.* Although unclear, it appears the August x-rays showed that three of the six pins surgically implanted in his hand "came out," which caused him pain and "fear that [his] hand [was] not healing properly." *Id.* He was seen by surgery again on January 27, 2023, and told that "all six . . . pins had [come] out" but "surgery was not done at [that] time." *Id.* at 4. Plaintiff asserts Centurion and unknown medical providers at DCI, OCI, and RMC were deliberately indifferent to his serious medical needs. *Id.* at 1–2, 5. As relief, he seeks an injunction "for a second opinion" and nominal, compensatory, and punitive damages. *Id.* at 5.[2]

The Prison Litigation Reform Act (PLRA) requires a district court to dismiss a complaint filed by a prisoner if the court determines it is frivolous, malicious, or fails to state a claim on which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b)(1). A plaintiff's "prisoner" status is determined at the

---

[2] According to the FDC's website, Plaintiff was released from prison on November 26, 2023. *See* Offender Information Search, available at https://fdc.myflorida.com/OffenderSearch/Search.aspx (last visited May 20, 2024). His request for injunctive relief has been rendered moot by virtue of his release. *See Spears v. Thigpen*, 846 F.2d 1327, 1328 (11th Cir. 1988).

2

time he files his complaint. *See Danglar v. Dep't of Corr.*, 50 F.4th 54, 59 (11th Cir. 2022). Since the PLRA's "failure-to-state-a-claim" language mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, courts apply the same standard in both contexts. *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997). *See also Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Labels and conclusions" or "a formulaic recitation of the elements of a cause of action" that amount to "naked assertions" will not suffice. *Id.* (quoting *Twombly*, 550 U.S. at 555). Moreover, a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001) (quoting *In re Plywood Antitrust Litig.*, 655 F.2d 627, 641 (5th Cir. Unit A Sept. 8, 1981)). In reviewing a complaint, a court must accept the plaintiff's allegations as true, liberally construing those by a plaintiff proceeding *pro se*, but need not accept as true legal conclusions. *Iqbal*, 556 U.S. at 678.

Plaintiff's complaint is subject to dismissal under the PLRA because he fails to "state a claim to relief that is plausible on its face." *See id.* To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under the color of state law deprived him of a right secured under the United States Constitution or federal law. 42 U.S.C. § 1983. A claim against a municipality may proceed under § 1983 but only when a plaintiff alleges a municipal policy or custom "caused a constitutional tort."[3] *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 691 (1978). A plaintiff may not proceed against a municipality under § 1983 solely on a theory that the municipality employed an individual who harmed him. *Id.*

Plaintiff does not allege any constitutionally inadequate medical care was attributable to a Centurion policy or custom. *See* Compl. at 4. Indeed, he acknowledges that Centurion approved hand surgery and provided follow-up care, even if subjectively he believes such follow-up care was delayed or inadequate. *Id.* It appears he names Centurion as a Defendant merely because an individual medical provider employed by Centurion allegedly violated his

---

[3] "[W]hen a private entity ... contracts with a county to provide medical services to inmates, it performs a function traditionally within the exclusive prerogative of the state and becomes the functional equivalent of the municipality under [§] 1983." *Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011) (quoting with second alteration *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997)).

4

constitutional rights. *See id.* Such a theory of liability is not plausible under § 1983.

Plaintiff also fails to state a plausible claim against the "unknown" medical providers. Accepting as true that Plaintiff's "surgically implanted [pins came] out" or medical providers did not provide follow-up care as quickly as Plaintiff wanted, Plaintiff does not attribute any allegedly unconstitutional conduct to a specific individual. *See id.* at 1–4. In fact, he does not identify any medical providers by name in his complaint. *See id.* The Eleventh Circuit has consistently held that "fictitious-party pleading is not permitted in federal court" unless a plaintiff describes a John or Jane Doe defendant with such particularity that he or she can be identified and served. *See Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010); *Williams v. DeKalb Cnty. Jail*, 638 F. App'x 976, 976–77 (11th Cir. 2016) ("A fictitious name . . . is insufficient to sustain a cause of action.").[4] Plaintiff's attempt to proceed against individuals based on their titles alone (e.g., "medical providers" or "doctors" at DCI, OCI, or RMC) is tantamount to naming John or Jane Doe defendants, and he provides no description of any medical provider such that any could be identified and served.

---

[4] Any unpublished decisions cited in this Order are deemed persuasive authority on the relevant point of law. *See McNamara v. GEICO*, 30 F.4th 1055, 1061 (11th Cir. 2022).

5

Even if some medical providers could be identified and served, however, Plaintiff's bare allegations of improper or delayed medical care do not rise to the level of deliberate indifference. A prisoner seeking to bring a deliberate indifference claim under § 1983 "has a steep hill to climb," *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020), because when prison medical providers provide treatment and "the dispute is over the adequacy of th[at] treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in tort law," *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (1st Cir. 1981)). In other words, "incidents of negligence or malpractice [are] not . . . constitutional violations." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991).

Similarly, "whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) (quoting *Estelle v. Gamble*, 429 U.S. 97, 107 (1976)). *See also Harris*, 941 F.2d at 1505 ("[A] simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis

6

or course of treatment [does not] support a claim of cruel and unusual punishment.").

To state a plausible deliberate indifference claim, a plaintiff must do more than allege the care he received was "subpar or different from what [he] want[ed]." *Keohane*, 952 F.3d at 1277. That is because "[d]eliberate indifference is not about 'inadvertence or error in good faith,' but rather about 'obduracy and wantonness'—a deliberate refusal to provide aid despite knowledge of a substantial risk of serious harm." *Stone v. Hendry*, 785 F. App'x 763, 769 (11th Cir. 2019) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).

In his complaint, Plaintiff mentions medical treatment he received at different institutions between April 2022 and January 2023, but it appears he seeks relief related solely to an alleged denial of treatment at RMC. *See* Compl. at 3. He alleges that "nothing was done" by RMC medical providers for five months, between August and January. *Id*. However, by the time Plaintiff was transferred to RMC, he had already undergone surgery to fix his broken hand and had follow-up visits. *Id*. He concedes he was seen by surgery at RMC in August when he was informed of a problem with some of the surgical pins, but he does not allege surgery recommended specific treatment for him between August and January or told him that his hand was not healing properly. *See id*.

7

To the extent Plaintiff was surgically evaluated in August and nothing was recommended to fix the issue noted with the surgical pins, Plaintiff's allegations do not permit the reasonable inference that he was denied medical care for no reason but rather that a specialist determined no immediate medical treatment was warranted or indicated at the relevant time. *Id.* With no supporting facts, Plaintiff's subjective belief that more should have been done or a second surgery should have been performed sounds speculative, amounting to no "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," which does not satisfy the federal pleading standard. *Iqbal*, 556 U.S. at 678. *See also Tani v. Shelby Cnty., Ala.*, 511 F. App'x 854, 857 (11th Cir. 2013) (affirming dismissal of a complaint that alleged, as labels and conclusions, violations of various constitutional rights with no supporting facts to "explain what actions caused which violations"). At most, Plaintiff alleges only medical negligence or a mere disagreement with medical treatment, not deliberate indifference. As such, he fails to state a plausible claim under § 1983.[5]

---

[5] Plaintiff also vaguely asserts he was transferred in retaliation for filing grievances at RMC. *See* Compl. at 3. However, he does not assert that he is seeking to pursue a retaliation claim, nor does he allege that any of the referenced Defendants are responsible for the alleged retaliation. *See id.* at 4. Rather, he explicitly contends that he is seeking to pursue only a deliberate indifference claim against all Defendants. *Id.* at 5.

Accordingly, it is

**ORDERED:**

1.  This case is **DISMISSED without prejudice**.

2.  The **Clerk** shall enter judgment dismissing this case without prejudice, terminate any pending motions as moot, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 22nd day of May 2024.

_____
BRIAN J. DAVIS
United States District Judge

Jax-6
c:   Edward White

9